509 So.2d 1299 (1987)
Byron Anthony HARRIS, Appellant,
v.
STATE of Florida, Appellee.
No. BO-367.
District Court of Appeal of Florida, First District.
July 15, 1987.
*1300 Michael E. Allen, Public Defender, and David P. Gauldin, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Joseph W. Stanco, Asst. Atty. Gen., Tallahassee, for appellee.
NIMMONS, Judge.
The defendant was convicted of unarmed robbery under Section 812.13(2)(c), Florida Statutes, kidnapping under Section 787.01(2), and two counts of sexual battery under Section 794.011(5). The defendant appeals the trial court's upward departure sentences.
The reasons given by the trial judge for departure were set forth in unnumbered paragraphs as follows:
The victim suffered extreme psychological trauma at the hands of this Defendant during the commission of these offenses. Injury is so great that she has been receiving and approved for Workman's Compensation. She is unable in any way to carry on a normal social activity and has sexual dysfunctional problems with her husband.
The Defendant's prior criminal history shows an escalation of the type crimes that he committed from the year 1978 through now which included misdemeanors and felonies and he is now convicted of a life felony.
The Court finds that this Defendant's period of separation from society must be more than that allowed by the guidelines or it will continue to escalate.
The Defendant is a career criminal as shown by his prior history and is incapable of being rehabilitated.
Even if we were to regard psychological trauma as an inherent component of all robberies, kidnappings and sexual batteries, we do not believe the departure sentences are vulnerable to a Lerma[1] attack because the record in the instant case clearly shows that the defendant emotionally traumatized the victim to an extraordinarily greater degree than that which is involved in most such cases. See Austin v. State, 507 So.2d 132 (Fla. 1st DCA 1987) (opinion on rehearing):
We agree with the Second District [in Tompkins v. State, 483 So.2d 115 (Fla. 2nd DCA 1986)] that, in order to constitute a valid reason for departure, the record must demonstrate that the victim of the kidnapping suffered unusual trauma.
Id., at 134. See also Grant v. State, 510 So.2d 313 (Fla. 4th DCA Jan. 16, 1987) (fear *1301 and emotional trauma, even though inherent components of the crime of robbery, held a proper basis for upward departure because victim's trauma was greater than that usually associated with a single robbery); Cowan v. State, 505 So.2d 640 (Fla. 1st DCA 1987) (no "extraordinary circumstances" present); Davis v. State, 458 So.2d 42 (Fla. 4th DCA 1984), decision approved, 477 So.2d 565 (Fla. 1985).
In addition, the Florida Supreme Court has recently expanded significantly the circumstances under which emotional trauma may be properly considered as a reason for departure. In State v. Rousseau, 509 So.2d 281 (Fla. 1987), the Court held:
In addition to the extraordinary circumstances clearly not inherent in the crime charged, we perceive that there may be another situation where psychological trauma to the victim may be utilized to depart from a guidelines sentence. We hold psychological trauma to the victim may constitute a clear and convincing reason for departure when the victim has a discernible physical manifestation resulting from the psychological trauma. (emphasis supplied)
The facts of the instant case and the substantial evidence presented to the trial judge at sentencing amply support psychological trauma as a clear and convincing reason for departure.
At midnight on January 13, 1986, the defendant, a parolee from New York, entered a convenience store in Orange Park, Florida. The victim, who was in the store's cooler at the time, turned around and stated that she saw the defendant with a revolver. The defendant demanded money and threatened to blow the victim's head off. The victim, who was terrified, complied by handing all the money to the defendant in a paper bag while the defendant repeatedly threatened to blow her head off.[2]
The defendant then ordered the victim out of the store to where her car was parked. He forced her to get into her car with him and made her drive them around until he ordered her to stop the car in a cul-de-sac. The defendant then made the victim disrobe whereupon he began fondling and mouthing her breasts and digitally violating her vaginal area. The defendant then grabbed the victim's head and forced his penis into her mouth. During this time the defendant threatened to rape her anally. Eventually, the defendant ejaculated in the victim's mouth and forced her to swallow his ejaculate.
The defendant then told the victim to get dressed. He told her to "tell them it was a white man that done it." He also said that if she reported him, "I'm going to find you and kill you." The defendant then exited the car and fled.
Ample evidence was presented at sentencing regarding the devastating effects which the defendant's crimes had on the victim. The trial judge, who has had many year's experience on the bench, observed at the sentencing hearing that this victim "has exhibited to this court more psychological damage than any other victim the court can recall in its memory."
In addition to the victim's own testimony regarding the toll which the defendant's crimes have taken on her, the court also received a written report from her therapist. The evidence established that prior to her encounter with the defendant, she had been a happy, well-adjusted, trusting young (23 year-old) woman who related well to others and had a good marriage. She testified that the defendant's acts had totally changed her life and that she had been seeing a psychiatrist since her encounter with the defendant.
By the time of the sentencing hearing, she had had to seek help from her therapist on 12 occasions. In a letter furnished to the court, the therapist stated that it could be anticipated that continuing therapy would be necessary "for an extended period *1302 of time to assist [the victim] in overcoming the long-term effects of her rape." Among such long-term effects, the therapist stated that "profound lack of trust is the most damaging," and that the victim now views the world as "a hostile and dangerous place", that "venturing out of her home requires great courage" and that under these conditions "her ability to maintain gainful employment is eliminated, as is her prospect of functioning normally socially and as a productive member of the community."
Among other things, the victim testified: (1) that she had been afraid to even go outside her home; (2) that she is in such a state mentally that she is unable to work; (3) that she is no longer able to communicate normally with other people and cannot establish eye contact with people anymore  she stated, "I just don't want anyone to bother me and I'm afraid to get close to anyone"; (4) that, although previously enjoying a satisfactory sexual relationship with her husband, she was now sexually dysfunctional; (5) that she had developed severe, recurring headaches; (6) that she suffered from severe depression for which she was having to be medicated; and (7) that she experienced recurring nightmares and loss of sleep.
We are of the view that the threshold of emotional trauma necessary under the rationale of Austin v. State, supra, in order to justify upward departure was substantially exceeded in this case. We are also of the view that departure because of psychological trauma was justified under the recent holding of the Supreme Court in Rousseau, supra, in that the victim has a "discernible physical manifestation resulting from the psychological trauma."
The reason our opinion has gone into the detail it has regarding the terrible criminal acts perpetrated upon the victim and the effects upon her is because of our uncertainty  and perhaps that of our sister appellate courts  over the extent to which the Florida Supreme Court intended for its rationale in Lerma, supra, to be applied.[3] To read Lerma as establishing so rigid a rule as to preclude any distinction between the kind of heinous sexual battery which was involved in the instant case (with its horrendous psychological scarring of the victim) and a much less severe sexual battery (e.g., a "date rape" situation where the offender exceeds the scope of consent) would be grossly unfair to victims of the former kinds of offenses and unduly restrict the exercise of rational and reasonable discretion by the sentencing judge. We do not believe the Supreme Court intends such an inflexible application of the guidelines.
This conclusion is buttressed by the Supreme Court's decision in Vanover v. State, 498 So.2d 899 (Fla. 1986). There, the Court approved, as clear and convincing, the trial court's following stated reason for upward departure: "This was a particularly aggravated set of circumstances which sets this case far and above the average aggravated battery." Although Vanover did not involve the precise issue involved in our case regarding emotional trauma, there is a parallel which we believe supports our holding in this case. In any event, we feel obliged to certify to the Florida Supreme Court the following as a question of great public importance:
Whether a defendant's infliction of an extraordinary amount of emotional trauma can be a valid reason for departure where the defendant has committed robbery, kidnapping and sexual battery upon the victim.
The trial court's second reason for upward departure, which is covered by both the second and third unnumbered paragraphs of his written reasons, supra, was defendant's escalating pattern of criminality. The record in this case justifies such a finding factually. Further, such is *1303 a valid reason for departure. Keys v. State, 500 So.2d 134 (Fla. 1986); Hester v. State, 503 So.2d 1342 (Fla. 1st DCA 1987); compare Nichols v. State, 504 So.2d 414 (Fla. 1st DCA 1987).
The trial court's last reason for departure, that "the defendant is a career criminal as shown by his prior history and is incapable of being rehabilitated," is invalid under the Supreme Court's holding in Hendrix v. State, 475 So.2d 1218 (Fla. 1985).
Notwithstanding the invalidity of the last reason for departure, we find, under the holding in Albritton v. State, 476 So.2d 158 (Fla. 1985) and Casteel v. State, 498 So.2d 1249 (Fla. 1986), that the state has shown beyond a reasonable doubt that the absence of this invalid reason would not have affected the departure sentence. We therefore affirm the sentence.
With respect to the defendant's remaining point, in which he claims that the trial court should have replaced his court-appointed trial attorney, we have thoroughly examined that point and find the same to be without merit.
Affirmed.
THOMPSON, J., concurs.
SHIVERS, J., concurs in part and dissents in part with written opinion.
SHIVERS, Judge, concurring in part and dissenting in part.
I would affirm the conviction but would reverse and remand for resentencing based on Lerma v. State, 497 So.2d 736 (Fla. 1986), and Hendrix v. State, 475 So.2d 1218 (Fla. 1985). I would also note that emotional trauma equal to that suffered by the victim here could be suffered by a victim of "date rape."
NOTES
[1] Lerma v. State, 497 So.2d 736 (Fla. 1986); see also Keys v. State, 500 So.2d 134 (Fla. 1986) and Casteel v. State, 498 So.2d 1249 (Fla. 1986).
[2] At the sentencing hearing, the victim testified that, throughout her ordeal, the defendant threatened approximately 20 times to blow her head off.
[3] Moreover, we are not certain that the Supreme Court in Rousseau, supra, in referring to "physical manifestations resulting from the psychological trauma" (emphasis supplied) contemplated the kind of manifestations established in the instant case.